## Department of Public Safety & Corrections
### State of Louisiana
Louisiana State Penitentiary



**JOHN BEL EDWARDS**
Governor

**JAMES M. LE BLANC**
Secretary

STATE OF LOUISIANA

WEST FELICIANA PARISH

ANGOLA, LOUISIANA

I hereby certify that the attached documents are TRUE AND CORRECT copies of the

originals that are maintained at Louisiana State Penitentiary.

Certified Copy of ARP LSP 2019-0129

*Delshadee Scott*

Delshadee Scott #153568

Ex-Officio Notary

Department of Public Safety & Corrections/LSP

Date: 12-3-19

**EXHIBIT 2**

Alphonse Porter 380822 Case

LOUISIANA STATE PENITENTIARY

ANGOLA, LOUISIANA

**ARP NUMBER:  LSP - 2019 - 0129**

RE:  ALPHONSE PORTER    380822

LOCATION:  _____ C July 11/8 _____

I HEREBY ACKNOWLEDGE RECEIPT OF 1ST STEP RESPONSE FORM REGARDING REQUEST FOR REMEDY NUMBER LSP-2019-0129.

RECEIVED BY: _Alphonse Porter  380822_____
                    (INMATE'S NAME & NUMBER)

DATE RECEIVED: _2-26-19_____

DELIVERED BY: _Sgt John Talves_____

==============================================================================

1.    Have the inmate sign this receipt.

2.    Delivery Officer signs the receipt and dates it.

3.    Give the Inmate the Manila Envelope and contents.

4.    Return the receipt to LEGAL PROGRAMS DEPARTMENT.

**RECEIVED**

MAR 0 7 2019

LEGAL PROGRAMS DEPARTMENT

000001

LOUISIANA STATE PENITENTIARY
ANGOLA, LOUISIANA

INMATE:    380822 ALPHONSE PORTER

LOCATION:  C JAG 1/R

### ACKNOWLEDGMENT OF RECEIPT OF SECOND STEP RESPONSE

This will acknowledge receipt of the SECOND STEP response (SECRETARY'S RESPONSE) OF ARP #LSP-**2019-0129** .

RECEIVED BY: _Alphonse Porter_

DATE RECEIVED: _3-20-2019_

DELIVERED BY: _m/sgt Colebun_

===============================================================
PLEASE READ THE FOLLOWING
INSTRUCTIONS TO DELIVERY OFFICER:

1.    Have the inmate sign and date the second step portion of
      the BROWN ENVELOPE MARKED WITH *** acknowledging receipt of the
      second step response.
      **PLEASE HAVE BOTH AREAS WITH THE *** SIGNED BEFORE YOU RETURN TO LEGAL.**

2.    Have the inmate sign BOTH AREAS OF this receipt.

3.    Delivery Officer MUST sign receipt and date it.

4.    Give the inmate the contents of the envelope.

5.    Return the BROWN envelope and the receipt to LEGAL PROGRAMS DEPARTMENT

DUE BACK DATE

MAR 2 2 2019

RECEIVED

MAR 2.1 2019

LEGAL PROGRAMS DEPARTMENT

000002

# LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
## CORRECTIONS SERVICES

### CASE NUMBER: LSP-2019-0129

### SECOND STEP RESPONSE FORM
### (HEADQUARTERS)

TO: <u>PORTER, ALPHONSE    380822</u>                          <u>LSP</u>
      Offender Name and Number                          Living Unit

Response to Request Dated 02/27/2019, Received in this Office on 03/11/2019:

Your request for an administrative review of ARP# LSP-2019-0129 has been received.  A qualified member of the Headquarters staff has reviewed your request in order to render a fair and impartial response.

Your allegations have been considered.  In statements from security staff, they deny your allegations and there is no reason to doubt the credibility of these officers.  You have failed to provide any evidence to substantiate your allegations or that would cause us to believe otherwise.  The first step response prepared by the LSP staff is deemed adequate and appropriate.  As such, this office concurs with staff and finds no further investigation warranted.

Your request for relief is denied.

_____                    _____
            Date                                       Secretary's Signature or His Designee

000003

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
CORRECTIONS SERVICES
OFFENDERS RELIEF REQUEST FORM

CASE NUMBER: LSP-2019 -0129

TO:  <u>ALPHONSE PORTER 380822</u>          <u>C JAG 1/R</u>
     Offender's Name and Number              Living Quarters

<u>10/30/2018</u>
Date of Incident

X              ACCEPTED:  This request comes to you from the Wardens Office.  A response will be
               issued within 40 days of this date.

               REJECTED:  Your request has been  rejected for the following reason(s):

<u>01/23/2019</u>                                    <u>Nyesha Davis</u>
   Date                                     Warden's Signature or Designee

000004

GRIEVANCE PROCEDURE

THIS GRIEVANCE COMES IN BEHALF OF ALPHONSE C. PORTER # 380822 A PRISONER HELD CAPTIVE AT ANGOLA, CAMP-C - JAGUAR-1-RIGHT-CELL #10 ; AND AGAINST CAPT. JUAN MANCHESTER , MAJOR DAVID VOORHIES , CAPT. DAMON TURNER , CAPT. JANE DOE , COL. T. BARTON , AND A/W DEMARS ... FOR VIOLATION OF MY EIGHTH AMENDMENT & RLUIPA RIGHTS - VIA, EXCESSIVE FORCE "CHEMICAL AGENT" USED EXCESSIVELY ( BEGININ WEIGHED 610 GRAMS AND ENDED WEIGHED 415 GRAMS) MALICIOUSLY AND SADISTICALLY CAUSED HARM , AS GUARD BRUTALITY WAS USED AGAINST ME WHILE I WAS IN FULL RESTRAINTS ( WAIST-CHAIN-CUFFS & LEG-IRON-SHACKLES ) AND INFRINGEMENT ON MY RELIGIOUS PRACTICE "RASTAFARIAN" . FOR THE ABOVE MENTIONED VIOLATION(s) - I NOW EXERCISE MY RIGHT TO UTILIZE THE GRIEVANCE SYSTEM SEEKING REMEDY ... AND RECEIVED ANY FORM OF RETALATION(s) .

RECEIVED 2019-0129    JAN 18 2019

ISSUES / FACTS : 0702/Camp C JAN 18 2019

WARDEN'S OFFICE

LEGAL PROGRAMS DEPARTMENT

ON OCTOBER 30, 2018 , I, ALPHONSE C. PORTER # 380822 - WAS HOUSED ON JAGUAR-1-RIGHT-CELL #10 - WHEN, CAPT. J. MANCHESTER , CAPT. JANE DOE AND MAJOR DAVID VOORHIES APPROACHED ME FOR NO OTHER REASON(s), BUT TO HARRASS ME, BECAUSE OF MY RELIGIOUS STATUS "RASTAFARIAN" - HEARING THE DISRESPECTFULNESS & THREATS AGAINST ME AND MY RELIGIOUS BELIEFS - I AWARED, THESE NAMED GUARDS, THAT I KNOW MY RIGHTS AND WILL FILE GRIEVANCE AGAINST THEM - I, THEN WAS ORDERED TO COME TO THE CELL BARS TO BE RESTRAINT, I COMPLIED, AND WAS FULLY RESTRAINT-ED ( WAIST-CHAIN-CUFFS AND LEG-IRON-SHACKLES), AND THEN I WAS ESCORTED TO TIGER-1-RIGHT-SHOWER - WHERE WITHOUT ANY JUSTIFICATION PROVOCATION - I WAS CHEMICAL AGENT WITH EXCESSIVE AMOUNTS OF GAS ( BEGINING WEIGH 496 GRAMS - END WEIGH 350 GRAMS) ... AGAIN, CAPT. J. MANCHESTER , ESCORTS ME INTO TIGER'S LOBBY ( FULLY RESTRAINTED) WHEN CAPT. D. TURNER , MAJOR DAVID VOORHIES , COL. T. BARTON , AND MANCHESTER CONTINUED THEIR THREATS TO SERIOUSLY HARM ME PHYSICALLY, IF I DID NOT BELIEVE IN THEM AS GODS AND DIDN'T GET A HAIRCUT & SHAVE - I GOT ON MY KNEES, CLOSED MY EYES AND STARTED PRAYING TO JAH - I THEN FELT A CHAIR HIT HARD AGAINST MY SIDE - QUICKLY, I OPENNED MY EYES TO SEE MAJOR D. VOORHIES, CHAIR IN HIS HANDS, STANDING OVER ME CURS-ING ME AND REPEATING THAT HE WAS GONNA KILL ME ... AT THAT VERY MOMENT THE MAJOR, JERKS ME UP AGGRESSIVELY FROM THE KNEELING-POSITION, I WAS IN, AND THEN GRABS ME BY THE THROAT AND SLAMS ME INTO THE BRICK WALL, KNOCKING THE AIR OUT OF ME - AS I'M CHOUGHING TRYNA BREATHE - CAPT. TURNER GRABS ME AND SLAMS ME TO THE FLOOR, BUSTING MY HEAD AND UNCONSCIOUS I WENT ... UPON GAINING CONSCIOUSNESS , MAJOR, IS STRADDLED ATOP OF ME SITTING IN MY STOMACH WITH CLIPPERS IN HIS HANDS THAT MAJOR USED TO SMACK ME IN THE MOUTH WITH, BUSTED MY MOUTH, CHIP-ED AND LOOSEN MY TWO FRONT TEETHS AND AS IF THE MAJOR WASN'T SATISFIED WITH HIS ACTIONS, ( THE SUPPOSE-TO-BE FACIAL-SHAVE WAS INCOMPLETE - AS BLOOD OOZED FROM MY FACE AND MOUTH INJURIES ) AND THEN THE MAJOR PRESSES THE CLIPPERS HARD TO THE LEFT-SIDE OF MY HEAD, CUTTING-OUT ONLY A BIG PATCH OF HAIR, AS THE SAME WAS DONE TO THE RIGHT-SIDE OF MY HEAD'S HAIR - CAPT. TURNER, WAS STAND ON MY WRISTS WITH HIS FEET WHILE THE WAIST-CHAIN-CUFFS, TIGHTENED AND PIERCED INTO MY WRISTS & SKIN - CAPT. J. MANCHESTER AND CAPT. JANE DOE, JUST STOOD THERE WATCHING FAILING TO INTERVENE ... COL. T. BARTON AND A/W DEMARS, WERE MADE AWARE BY ME OF THESE C.O.'s VIOLATIONS OF MY RIGHTS, BUT TO NO AVAIL

- PAGE ONE -

000005

WERE MY COMPLAINTS - INSTEAD, I WAS CHEMICAL AGENT, MALICIOUSLLY AND SADISTICALLY, EXCESSIVELY ( BEGAINING WEIGH 610 GRAMS AND ENDED WEIGH 415 ).

## CONCLUSION

WHEREFORE - FOR THE ABOVE MENTIONED REASON (S) I NOW EXERCISE MY RIGHT TO GRIEVANCE WITHIN THE INSTITUTION SEEKING REMEDY - BEFORE ASK JURISDICTION OF THE COURTS TO PROPERLY ADDRESS THE MATTER .

## RELIEFS

1). NOMINAL DAMAGES FOR THE VIOLATION (S) OF MY RIGHTS;

2). COMPENSATORY DAMAGES FOR THE PHYSICAL, AND PAIN & SUFFERING INJURIES SUSTAINED;

3). PUNITIVE DAMAGES FOR THE MALICIOUSLLY AND SADISTICALLY CAUSED INJURIES & CONST. VIOLATION (S);

4). MEDICAL EXPENSES, ETC. REIMBURSE;

5). SUSPEND, WITHOUT PAY THE GUARDS UNTIL THE INVESTIGATION IS COMPLETED; AND

6). TIMELY, FILE THIS GRIEVANCE AS ITS' WELL WITHIN 90 DAYS.

DATED: JANUARY 17, 2019

RESPECTFULLY SUBMITTED,

*Alphonse C. Porter*

AlPHONSE C. PORTER #380822
CAMP-C-JAGUAR-1-RIGHT-#10
LA. STATE PRISON
ANGOLA, LA. 70712

- PAGE TWO -

000006

CASE NUMBER: LSP-2019-0129

FIRST STEP RESPONSE FORM (FIRST STEP RESPONDENT)

TO: PORTER, ALPHONSE 380822                C JAG 1/R
                                           Living Quarters

Response to request dated , received in this office on 01/18/2019

In your letter of complaint dated January 17, 2019, while housed at Camp C, you state on October 30, 2018, Captain Juan Manchester, Captain David Voorhies, Jr., Captain Damon Turner, Assistant Warden Trent Barton and Assistant Warden Shannon Demars violated your 8th amendment right by administering excessive chemical agent on you while you were in full restraints. You state you were escorted into Tiger lobby and you were continuously threatened with physical harm if you did not believe in them (security named above) as gods and did not get a haircut. You state you were hit with a chair, thrown against a brick wall, slammed to the floor, hit in the mouth with clippers and two patches of hair was cut from your head.

Assistant Warden Trent Barton states you never notified him of any incident that you were involved in. He also states he never saw any officer beat or hit you with a chair. Assistant Warden Barton states he never made any threats towards you. Assistant Warden Barton states he has no knowledge of this incident or claims made by you.

Assistant Warden Shannon Demars states there was a beeper activation on October 30, 2018, due to you causing a disturbance in your cell. He states he was not on the unit at the time of the incident. He states according to institutional records the minimum amount of chemical agent was used to gain control of the situation. He states at no time was unnecessary use of force brought to his attention by you or any employee.

Captain Juan Manchester states he used chemical agent on you because you refused to come to the cell bars so restraints could be removed from you. He states at no time did he use excessive force towards you. He states proper procedures and protocol was followed during this incident.

Captain David Voorhies, Jr. states he never hit you with a chair, and he never cut your hair. He states he always conducts himself in a professional manner.

Captain Damon Turner states he conducts himself in a professional manner, and at no time was unnecessary force used on you.

Institutional records reflect on October 30, 2018, Captain Manchester responded to a beeper activation on Jaguar. He activated his body camera and proceeded to the unit. Upon arrival he was informed you were causing a disturbance by banging on the table in your cell. You were escorted to Tiger 1 right and after being placed in a cell you refused to come to the bars so your restraints could be removed. Captain Manchester gave you several direct verbal orders to come to the bars so your restraints could be removed. You flatly refused all orders given to you so the minimum amount of chemical agent was administered, and Captain Manchester was able to retrieve the restraints. Institutional records further reflect you were issued a disciplinary report for rule infractions, aggravated disobedience and defiance, on October 30, 2018. You appeared in disciplinary court on November 1, 2018, where you pled guilty to these rule infractions. Any force used was used in accordance with Penitentiary Directive 09.002, Use of Force. You were seen by medical personnel on October 30, 2018, and treated accordingly.

000007

No evidence is found to support your allegations.  Your request for administrative remedy is denied.

Prepared by: _Corie Mougeot, Lt._

<div align="center">Corie Mougeot, Lieutenant</div>

Approved by: _____

<div align="center">James Cruze, AWIII</div>

_2/13/19_

<div align="center">Date</div>

Joseph F. G. Lamartiniere
Deputy Warden
_____
<div align="center">Unit Head</div>

<u>Instructions to Offender:</u>  If you are not satisfied with this response, you may go to Step Two by checking below and forwarding to the ARP Screening Officer in the manila envelope within 5 days of your receipt of this decision.

( )   I am not satisfied with this response and wish to proceed to Step Two.

Reason:

_____
_____
_____
_____

_____          _____
<div align="center">Date                                    Offender's Signature    DOC#</div>

000008

# Louisiana State Penitentiary
## Angola, Louisiana

# ARP Statement

ARP Number: __2019-0129_____ Date: __01-29-19_____

Inmate's Names and Number: __ALPHONSE PORTER #380822_____

IN RESPONSE TO THE ABOVE ARP, I A.W. BARTON OFFER THE FOLLOWING. OFFENDER PORTER HAS NEVER NOTIFIED ME OF ANY INCIDENT THAT HE WAS INVOLVED IN. AT NO TIME DID I SEE ANY OFFICERS BEATING UP, OR HITTING OFFENDER PORTER WITH A CHAIR. I HAVE NEVER MADE ANY THREATS TOWARDS OFFENDER PORTER. I HAVE NO KNOWLEDGE OF THE INCIDENT OR CLAIMS MADE BY OFFENDER PORTER. THIS IS FOR YOUR INFORMATION AND FURTHER HANDLING.

Signature of Officer: _____
Print Your Name: _____TRENT BARTON A.W.2_____
Date: __01-29-19_____

000009

**Louisiana State Penitentiary**

**Angola, Louisiana**

**ARP STATEMENT**

| ARP NUMBER | 2019-0129 | DATE | 2/05/19 |
|---|---|---|---|
| **INMATE'S NAME AND NUMBER** | | Alphonse Porter 380822 | |

**STATEMENT:**

In response to ARP 2019-0129 I offer the following:
There was a beeper activation on October 30, 2018, on Jaguar 1/right due to offender Porter causing a disturbance in his cell. I was not on the unit at the time of the incident. According to institutional records the minimum amount of chemical agent required to gain control of the situation was used. Institutional records further state the body camera was used. At no time was the use of unnecessary force brought to my attention by this offender, or any employee.

| SIGNATURE & RANK OF OFFICER | AW? S. Demm |
|---|---|
| **PRINT YOUR NAME & RANK** | Shannon Demars,A/W/Camp C |
| **DATE** | 2/05/19 |

000010

## Louisiana State Penitentiary
## Angola, Louisiana
## ARP STATEMENT

**ARP Number:  2019- 0129**                    **Date: January 30, 2019**

**Inmate's Name and Number:** Alphonse Porter #380822

| |
|---|
| **In response to ARP #2019-0137 I, Capt. Manchester submit the following statement: I** |
| Captain Manchester used chemical agent  on offender Alphonse Porter because he refused to |
| Come to the cell bars so that restraints could be removed. At no time did I, Captain Manchester |
| use excessive force toward this offender. Proper procedures and protocol was followed |
| during this incident. |
| |
| |
| |
| |
| |
| |
| |

**Officer Signature:** _[signature]_                    **Date: January 30, 2019**

**Officer Name (print):  Juan Manchester / Capt.**

000011

**Louisiana State Penitentiary**
**Angola, Louisiana**

# ARP STATEMENT

**ARP NUMBER: LSP 2019 0129**                    **DATE: 29 Jan 19**

**Inmate's Name and Number: Alphonse Porter # 380822**

In response to the above ARP I Capt. David Voorhies Jr. have the following information to offer. I Capt. David Voorhies Jr. have never hit Offender Alphonse Porter # 380822 with a chair or any other object. I have never threatened to kill Offender Porter or threatened him in any other manner. I Capt. Voorhies have never taken clippers and cut Offender Porter's hair. I Capt. David Voorhies Jr. always conduct myself in a professional manner while at work. This is for your information and further handling.

**David Voorhies Jr, Captain**
**Main Prison / West Yard / A-Team**

Cc:        file

000012

## Louisiana State Penitentiary
## Angola, Louisiana
### ARP STATEMENT

| ARP NUMBER | 2019-0129 | DATE | 2/08/19 |
|---|---|---|---|

| INMATE'S NAME AND NUMBER | Alphonse Porter  380822 |
|---|---|

**STATEMENT:**

In response to ARP 2019-0129 I offer the following:
At no time did I or anyone else conduct themselves in anything but a professional manner.  At no time was any unnecessary force used on this offender.

| SIGNATURE & RANK OF OFFICER | |
|---|---|
| PRINT YOUR NAME & RANK | Damon Turner/Captain |
| DATE | 2/08/19 |

000013



**LOUISIANA STATE PENITENTIARY**
**R.E . BARROW, JR. TREATMENT CENTER**
**ANGOLA, LA   70712**

TO: INMATE

**MEMORANDUM**

TO: DIETICIAN        MEMO TYPED DATE:            ISSUED DATE:

FROM: HEALTH INFORMATION MANAGEMENT DEPARTMENT        RE: DIET
================================================================================
-                          LOCATION:CBD L/R 0
DOC#:380822        NAME:PORTER            ,ALPHONSE              RACE:B

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
PERMANENT DIET:      MEMO TYPED DATE: 04/27/2016    ISSUED DATE: 04/27/2016
RASTAFARIAN DIET X PERMANENT. (RELIGIOUS DIET)


               CHAPLAIN MAGEE
PER ORDERS OF: ROUNDTREE, MD

                                              CARDIAC
Diet Catetory:                     LISTING  DIABETIC
                                              RENAL
                                              HYPERTENSIVE
                                              OTHER

000014

192

Camp C Tiger 1/2 unit [illegible] — Supt B Tesh
[illegible] — [illegible] Capt Manchester

Officer Sgt [illegible] C/O
Officer Col [illegible]
Date 10-20-18
From [illegible] Tiger 1/2 unit total 67 [illegible]
[illegible]
[illegible]
[illegible]
[illegible]
Note [illegible] have read and understand [illegible] posted [illegible]
[illegible]
[illegible] Tiger 1/2 unit [illegible]
[illegible]
[illegible]
7:00 [illegible] all [illegible]
[illegible]
7:50 [illegible] all [illegible]
8:30 [illegible] all [illegible]
9:30 [illegible] all [illegible]
[illegible] Capt Manchester
[illegible]
[illegible]
[illegible]
10:00 [illegible] unit count 13, 24, 13, 13 total 13
2 [illegible] 1 2 [illegible] 3 1 [illegible] 4
A W [illegible]
[illegible]
10:20 [illegible] all [illegible]
10:48 [illegible] APOC
[illegible] on unit [illegible]
11:40 [illegible] all [illegible]
12:15 [illegible] all [illegible]

193

Chemical agent used on [illegible] refused to come to the cell for [illegible] restraint to be removed. [illegible] 350 gu Capt [illegible] Cam attend. Clean jumpsuit / shower. Medical - 3 notified.

1:35    [illegible] all secure

1351    30 [illegible] Ent. [illegible] M3y chemical Agt on for.

200    4th pill call Lady [illegible] [illegible] — Sgt [illegible] Capt [illegible] [illegible]

230    [illegible] all secure

3:05    [illegible] in cad $\frac{2}{1}$,13  $\frac{4}{19}$ 23  $\frac{3}{10}$ 13  $\frac{4}{9}$ 13  total 62

3:20    [illegible] count [illegible] 170

350    [illegible] all secure

4:45    [illegible] all secure

5:00    [illegible] all secure

5:30    Relieved of all detail and [illegible]
        Sgt [illegible]
        at [illegible]

000016

Form C-05-001-W-1
15 July 2011

**DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
CORRECTIONS SERVICES
UNUSUAL OCCURRENCE REPORT
(Category A, B, C Incidents)**

INSTITUTION: **Louisiana State Penitentiary**

| NAME<br>Alphonse Porter | NUMBER<br>#380822 | DORM OR CELLBLOCK<br>Jag 1 Right | DATE OF INCIDENT<br>10/30/18 | TIME OF INCIDENT<br>12:30 pm |
|---|---|---|---|---|
| **LOCATION OF INCIDENT**<br>Jag 1 Right | | **WITNESSES: Sgt. Stewart** | | |

**TYPE OF INCIDENT - CHECK APPROPRIATE BOXES**

**Category A Incidents:**
- [ ] Escape
- [ ] Death by other than natural causes
  - [ ] Accident
  - [ ] Violence
  - [ ] Suicide
  - [ ] Suspicious
  - [ ] Unknown
  - [ ] Unnatural
  - [ ] Execution
- [ ] Assault resulting in life threatening Injury
  - [ ] Offender on Staff
  - [ ] Offender on Offender
  - [ ] With Weapon
  - [ ] Without Weapon
  - [ ] Staff Injured in Line of Duty
- [ ] Other
  - [ ] Significant Property Damage
  - [ ] Hostage Situation
  - [ ] Major Work Stoppage of Offenders
  - [ ] Employee Work Stoppage
  - [ ] Riot
  - [ ] Natural Disaster
  - [ ] Tact Team/Outside Assistance
  - [ ] Lockdown of all or part of facility
  - [ ] Hunger Strike of Entire Facility or Multiple Units
  - [ ] Large Scale Evacuation
  - [ ] Other - Determined by Unit Head

**Category B Incidents:**
- [ ] Escapee Apprehended
- [ ] Death Due to Natural Causes
  - [ ] Expected
  - [ ] Unexpected
- [ ] Gunshot - Shoot to disable (Class I)
- [ ] Assault with significant injury
  - [ ] Offender on Staff
  - [ ] Offender on Offender
  - [ ] With Weapon
  - [ ] Without Weapon
  - [ ] Attempted Suicide with Significant Injury
  - [ ] Self Mutilation with Significant Injury
- [ ] Hunger Strike – Individual
- [ ] Hunger Strike – Organized
- [ ] Use of Force w/Significant Injury
  - [ ] Lockdown of Limited Number of Offenders
- [ ] Significant Water/Power Outage
- [ ] Property Damage - Limited
- [ ] Evacuation – Limited
- [ ] Other – Employee Arrest
- [ ] Other - Determined by Warden

**Category C Incidents:**
- [ ] Agg. Sex Offense (Offender/Staff)*
- [ ] Agg. Sex Offense (Offender/Offender)*
- [ ] Staff/Civilian Sexual Misconduct*
- [ ] Gunshot - Warning Shot (Class II)
  - [ ] Self Defense - No Human Injury or Death
- [ ] Assault With No Significant Injury
  - [ ] Offender on Staff
  - [ ] Offender on Offender
  - [ ] With Weapon
  - [ ] Without Weapon
  - [ ] Throwing of Substances
- [x] Use of Force
  - [ ] Immediate
  - [ ] Planned
  - [x] Chemical Agents on Single Offender
  - [ ] Use of Taser
  - [ ] Cell Entry Team (Elec. Shield)
  - [ ] Less Lethal Weapons
  - [ ] Restraints Used (Restraint Chair, 4 Point, etc.)
  - [ ] Staff on Offender
  - [x] Use of Body Camera

* Copy to Investigations

**DESCRIPTION OF INCIDENT (ATTACH ADDITIONAL INFORMATION IF NEEDED)**

On the above date and approximate time, I, Captain Manchester responded to a beeper activation on Jag 1 Right unit. I activated my body camera and a short time later I arrived on the unit. I was informed by Sgt. Stewart that the above named offender was causing a disturbance by banging on his table in his cell. Offander Porter was escorted to Tiger 1 Right and after placing him in a cell, the above offender refused to come to the cell bars so that I could remove the restraints. I gave offender Porter several direct verbal orders to come to the bars in order to remove the restraints but he flatly refused. I exited the tier and retrieved chemical agent and gave offender Porter another direct verbal order to come to the bars and he refused. I administered the minimum amount of chemical agent into the cell and retrieved the restraints. The above offender and all other offenders housed on Tiger 1Right tier was treated by Medical personnel. Offender Porter was given a jumpsuit and shower. Major Voorhies was notified. Beginning weight 496 grams. End Weight: 350 grams.

| _Juan Manchester_ | 10-30-18 | 1:00 pm |
|---|---|---|
| REPORTING OFFICER<br>Juan Manchester. Camp C/BTEAM | DATE COMPLETED | TIME COMPLETED |

000017

Form C-05-001-W-1
15 July 2011

Pr 2/

## DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
### CORRECTIONS SERVICES
### UNUSUAL OCCURRENCE REPORT
#### (Category A, B, C Incidents)

INSTITUTION: Louisiana State Penitentiary

| NAME Alphonse Porter | NUMBER #380822 | DORM OR CELLBLOCK Jag 1 Right | DATE OF INCIDENT 10/30/18 | TIME OF INCIDENT 12:30 pm |
|---|---|---|---|---|
| LOCATION OF INCIDENT Jag 1 Right | | WITNESSES: None | | |

### TYPE OF INCIDENT - CHECK APPROPRIATE BOXES

**Category A Incidents:**
- [ ] Escape
- [ ] Death by other than natural causes
  - [ ] Accident
  - [ ] Violence
  - [ ] Suicide
  - [ ] Suspicious
  - [ ] Unknown
  - [ ] Unnatural
  - [ ] Execution
- [ ] Assault resulting in life threatening injury
  - [ ] Offender on Staff
  - [ ] Offender on Offender
  - [ ] With Weapon
  - [ ] Without Weapon
  - [ ] Staff Injured in Line of Duty
- [ ] Other
  - [ ] Significant Property Damage
  - [ ] Hostage Situation
  - [ ] Major Work Stoppage of Offenders
  - [ ] Employee Work Stoppage
  - [ ] Riot
  - [ ] Natural Disaster
  - [ ] Tact Team/Outside Assistance
  - [ ] Lockdown of all or part of facility
  - [ ] Hunger Strike of Entire Facility or Multiple Units
  - [ ] Large Scale Evacuation
  - [ ] Other - Determined by Unit Head

**Category B Incidents:**
- [ ] Escapee Apprehended
- [ ] Death Due to Natural Causes
  - [ ] Expected
  - [ ] Unexpected
- [ ] Gunshot - Shoot to disable (Class I)
- [ ] Assault with significant injury
  - [ ] Offender on Staff
  - [ ] Offender on Offender
  - [ ] With Weapon
  - [ ] Without Weapon
  - [ ] Attempted Suicide with Significant Injury
  - [ ] Self Mutilation with Significant Injury
- [ ] Hunger Strike – Individual
- [ ] Hunger Strike – Organized
- [ ] Use of Force w/Significant Injury
  - [ ] Lockdown of Limited Number of Offenders
- [ ] Significant Water/Power Outage
- [ ] Property Damage - Limited
- [ ] Evacuation – Limited
- [ ] Other – Employee Arrest
- [ ] Other - Determined by Warden

**Category C Incidents:**
- [ ] Agg. Sex Offense (Offender/Staff)*
- [ ] Agg. Sex Offense (Offender/Offender)*
- [ ] Staff/Civilian Sexual Misconduct*
- [ ] Gunshot - Warning Shot (Class II)
  - [ ] Self Defense - No Human Injury or Death
- [ ] Assault With No Significant Injury
  - [ ] Offender on Staff
  - [ ] Offender on Offender
  - [ ] With Weapon
  - [ ] Without Weapon
  - [ ] Throwing of Substances
- [x] Use of Force
  - [ ] Immediate
  - [ ] Planned
  - [x] Chemical Agents on Single Offender
  - [ ] Use of Taser
  - [ ] Cell Entry Team (Elec. Shield)
  - [ ] Less Lethal Weapons
  - [ ] Restraints Used (Restraint Chair, 4 Point, etc.)
  - [ ] Staff on Offender
  - [x] Use of Body Camera

* Copy to Investigations

### DESCRIPTION OF INCIDENT (ATTACH ADDITIONAL INFORMATION IF NEEDED)

On the above date and approximate time, I, Sgt. Stewart activated my beeper on Jag 1 Right unit because offender Alphonse Porter #380822 was causing a disturbance by banging on his table in his cell. I gave Offender Porter several direct verbal orders to stop causing a disturbance but he flatly refused all my orders. I activated my beeper and a short time later Captain Manchester arrived on the unit and escorted offender Porter to Tiger 1 Right. Major Voorhies was notified.

REPORTING OFFICER
Kendrick Stewart Camp C/BTEAM

DATE COMPLETED 10-30-18

TIME COMPLETED 1:00 pm

000018

## LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
### DISCIPLINARY REPORT

INSTITUTION: LSP    C Tig 1/R

| 1. Name of Offender | 2. Number | 3. Date of Incident | 4. Time of Incident |
|---|---|---|---|
| Alphonse Porter | 380822 | 10/30/18 | 12:30/pm |

| 5. Place of Incident | 6. Job Assignment (Offender) | 7. Housing Assignment (Offender) |
|---|---|---|
| Tier 1 Right | Ext L/D | JAg 1 Right |

| 8. Rule Violated | 9. Rule Number |
|---|---|
| Disobedience Aggravated, Defiance | #3, #5 |

**10. Description of Incident** (Include all relevant information - "unusual offender behavior, staff witnesses, physical evidence & disposition, immediate action including use of force"; use other side, if necessary)

On the above date and time Alphonse Porter # 380822 refused to come to the cell bars in order for the restraints to be removed off of him. Offender Porter began cursing and flatly refused all orders given. I gave the above offender several direct verbal orders to come to the bars but he refused. Body Camera was activated and the minimum amount of Chemical agent were Utilized on offender Porter. Beginning weight: 496 gram - End weight 350 gram. Maj. Voorhin was notified.

**11. Offender Placed in Adm. Seg.** ☑ Yes  ☐ No

| 12. Signature of reporting employee | 13. Name, Title, Assignment (Print) |
|---|---|
| [signature] | J. Norchester, Capt. Camp C |

| 14. Date of Report | 15. Time of Report | 16. Report (copy) given to above offender by: | 17. Offender's Signature: |
|---|---|---|---|
| 10/30/18 | 4:34p | J— | [signature] |

| 18. Plea by Offender: | ☐ Not Guilty ☑ Guilty | 19. Verdict: | ☐ Not Guilty ☑ Guilty |
|---|---|---|---|

| 20. Date of Hearing: | 21. Counsel Substitute: DOC# |
|---|---|
| 11-1-18 | 320757 |

**22. Motions:** None

**23. Reasons for Disposition:**
- ☑ Report is clear and precise.
- ☐ Lack of a credible defense/little or no defense.
- ☐ Based on his statement.
- ☐ The officer's version is determined to be more credible than the offender's.
- ☑ Pled guilty/accepted guilty plea.
- ☐ Only defense is denying contents of report.
- ☐ The offender presented no evidence to refute the charges.
- ☐ The investigative officer's testimony was deemed more truthful and accurate than the offender's.
- ☑ Plea bargain.
- ☐ The offender's demeanor led the board to believe that the offender's testimony was untrue.
- ☐ Other

**24. Reasons for Sentence:**
- ☑ Seriousness of offense.
- ☑ The need to protect the institution, employees, or other.
- ☑ Poor Conduct record. A total of 117 rule violation(s). A total of 112 Schedule B violations since 1997
- A total of 16 # 5 rule violations since 1997
- ☐ Other 35 5

**25. Sentence:** #3  12 weeks loss of yard privileges    Suspended ☐ ___ Days   Imposed ☑

**26. Sentence:** #5  12 weeks loss of telephone privileges    Suspended ☐ ___ Days   Imposed ☑

**27. DISCIPLINARY BOARD:**
Cost may be imposed for any property loss, damage, or medical expense occasioned through the fault of an offender who in so causing the loss, damage, or medical expenses also is found guilty through the disciplinary process of violating one or more of the rules set out in the Disciplinary Rules and Procedures for Adult Offenders.

RECEIVED NOV 05 2018 LSP/RECORDS

CHAIRMAN (DISCIPLINARY OFFICER)  Williams, Cr

MEMBER

000019

PAGE 1 OF

TO; DISCIPLINARY BOARD

FROM:

RE: ALPHONSE PORTER                MAX
    DOC# 380822          C JAG 1/R C TIG 1/R 0 L/D

DATE: 08/14/2009     October 31, 2018

On this date, the inmate's record was screened and the following list of inmates with whom he has had problems has been completed.

| NAME | | NUMBER | NATURE OF PROBLEM | DATE OF PROBLEM SITUATION | CURRENT LOCATION |
|------|--|--------|-------------------|---------------------------|-------------------|
| NICHOLAS PITREE | | 500154 | SEXUAL/RELATIONSHI | 7/30/09 | OAK 4 |

---

ENEMY REVIEW

---

| TOMMY | BROWN | 290768 | FIGHT JEFFERSON PARISH | 5/26/98 | |
|-------|-------|--------|------------------------|---------|--|
| DAVID WILSON | | 105493 | TTS | 9/9/97 | C BEAR 1 |

---

RECEIVED

NOV 0 5 2018

LSP/RECORDS

000020

023926

Form HC-01-A
4 September 2009 — **Health Care Request Form** — Institution: _____

Name: _Alpha port_    DOC#: _380822_    Age: _39_    Housing: _Ag 112_    Job Assignment: ___

## OFFENDER TO COMPLETE THIS SECTION ONLY—COMPLAINT AND/OR REQUEST:

Chemical Agent

**Health Care Personnel Screening:** Date: _10-30-18_    Time: _1354_    Location Seen: _Ag 112_

(Circle One) Emergency / Routine Sick Call / Work Related    Allergies: _NKA_

B/P _142/74_    Pulse _86_    Resp _18_    Temp _98_    Other _—_

**Assessment/Comment:** _Inmate in shower to be seen for chemical Agent, S/B _____ speaks w/o difficulty pt states he was sprayed in the face w/ redness. Noted _____ no s/s of guarding. Denies Sq weak + Dizzy, N/V pt w/o other complaints. Rec'd of pre _____

_Prozac, Zyprexa, Keppra, MSIR, Nitrate, Losartan_

| Disposition: | Health Care Practitioner Notes: |
|---|---|
| MTD<br><br>In Shower<br><br><br>**New Medications Ordered:**<br>_____<br>_____<br>_____ **Total #:** ____<br>Screener's Signature: _____ RN SSC | s/c<br><br>K_____ LPO<br>10/31/18<br>3:40pm<br><br>HCP's Signature: _____    Date: 10/31/18 |

☑ No Fees  ☐ $3 Access Fee  ☐ $6 Access Fee  ☐ $2 for Each Prescription Fee: $ _0_  Total: $ _0_

I understand that in accordance with Dept. Reg. No. B-06-001, I will be charged $3.00 for routine requests for health care services, $6.00 for emergency requests and $2.00 for each new prescription written and dispensed to me, with the exceptions noted in the referenced regulation. I am aware that if I declare myself a medical emergency and health care staff determine that an emergency does not exist, I may be subject to disciplinary action for malingering.

Offender's Signature: _X Unable to sign_    DOC#: _380822_    Date: _10-30-18_    Witness Signature: ___ RN SSC

Original - Offender's Medical Record    Yellow - Business Office    Pink - Offender's Copy

| November 28, 2018 | CHAPTER:<br><br>SECURITY AND CONTROL | DIRECTIVE NO.<br><br>09.002 |
|---|---|---|
| LOUISIANA<br>STATE<br>PENITENTIARY | SUBJECT:<br>USE OF FORCE | ACA STANDARD:<br><br>SEE ATTACHMENT |
| | REFERENCE:<br>Department Regulation Nos. B-06-001 (AM-F-43), C-01-008 (OP-A-19), C-01-016 (OP-E-4), C-02-006 (OP-A-16), C-02-006A (OP-A-17), C-03-003 (OP-A-3), C-05-001 (AM-I-4), C-05-001A (OP-A-6); Penitentiary Directive Nos. 04.003, 09.002/B, 09.007/B, 09.017, 09.021, 09.052, 13.019, 13.023,13.026 | |

PURPOSE:  To provide guidelines to govern the use of force and its limitations and to describe prohibited activities.  This policy is designed to assist employees in acting reasonably when confronted with situations requiring the use of force.

APPLICABILITY:    All Louisiana State Penitentiary employees.

POLICY:      It is the policy of Louisiana State Penitentiary that all reasonable steps be taken to minimize situations requiring the use of force by staff against offenders and to minimize the amount of force used in those situations.  It is recognized, however, that force may be necessary to accomplish the mission and goals of the Department to provide for public safety, staff and offender safety, and the maintenance of stability within the institution.  Employees will be provided with proper training and guidance in the use of force applications.

Procedures governing the use of force include both annual qualifications for staff likely to engage in activity that may involve the use of reasonable force and necessary certification under applicable regulating statutes for employees issued firearms or other security equipment.  Security equipment utilized in use of force applications shall be in accordance with Penitentiary Directive No. 09.021 and Department Regulation No. C-01-008 and C-02-006.  Only approved state-issued equipment will be used in the performance of official duties.

It is further the policy of Louisiana State Penitentiary that lethal weapons, less lethal weapons, electronic muscular disruption devices and restraints be used only by employees specifically trained in their use and when all available less drastic measures fail to accomplish control in handling group disturbances and subduing individuals.  Said force employed shall be proportional to the threat to which it is a response and shall cease when the resistance ceases.  Inventory of less lethal weapons shall be listed on the mandatory items inventory list, (see attachment DPS&C Weapons List for this inventory.)

000022

Penitentiary Directive No. 09.002
November 28, 2018
Page 2 of 18

DEFINITIONS:

Electronic Muscular Disruption (EMD) Device: A device that utilizes electro-muscular disruption technology that disrupts the body's ability to communicate messages from the brain to the muscles, causing motor skill dysfunction. For the purpose of this directive, EMD's include only the electronic capture shield and electronic restraint belt system. (The TASER® is also considered an EMD; however, refer to Department Regulation No. C-02-006A "Use of TASER®" for specific procedures regarding use of the TASER®.)

Excessive Force: Force is excessive when the resulting application of force is inappropriate to the circumstances either during an incident or in the aftermath of an incident.

Force: The application of a technique, action or device to compel a change in the actions of another person, which usually will result in compliance with a desired behavior, submission to authority or to deescalate a threatening behavior.

Force Continuum: Broad categories of force, in identifiable escalating/de-escalating stages of intensity, in response to an individual's actions. The categories are commonly identified as officer presence, verbal direction or command, soft empty-hand control, hand-held chemical spray or EMD devices, hard empty-hand control, batons and firearms. An individual's actions may be defined in broad categories including full compliance to commands, verbal uncooperativeness, passive resistance, active resistance, active aggression and aggravated active aggression (lethal force.)

Less Lethal Force: Defensive techniques or weapons that do not normally nor are intended, when properly applied, to cause death or serious bodily injury.

Less Lethal Weapons: Weapons designed to reduce the potential of causing serious physical injury or death. Use is restricted to situations where higher levels of force are unnecessary and lesser levels are inappropriate or ineffective. Less lethal weapons include:

1)    Chemical Agents and Munitions: Tear gas, mace spray or irritant dusts are chemical agents that cause irritation to the eyes, skin or respiratory system. Chemicals may be administered directly through a hand-held aerosol spray or at longer ranges by being fired or dispersed out of a launcher.

2)    Intermediate/Impact Weapons: Examples include batons and shields, which are available options in the force continuum.

Lethal Force: Any use of force reasonably calculated in the manner used to produce death or serious bodily injury.

000023

Penitentiary Directive No. 09.002
November 28, 2018
Page 3 of 18

Lethal Weapons: Any weapon reasonably calculated in the manner used, to produce death or serious bodily injury.

Necessary Force: Force used when all other options have been exhausted, unavailable or are not feasible.

Reasonable Force: Only that force which is reasonable and necessary under the particular circumstances to protect the public, staff, offenders, or others from bodily injury or only after other reasonable alternatives have been exhausted or it is determined that such alternative action(s) would be ineffective under the circumstances.

Restraints: Mechanical, electronic or other devices used in the force continuum to aid in the restriction of an individual's bodily movement for security purposes. (See Health Care Policy No. HC-29 "Utilization of Restraints for Medical and Mental Health Management Orders" for information concerning the use of restraints for medical and mental health purposes.)

Severe Mental Health Illness: A chronic or acute mental illness that impairs the offender's ability to maintain safety of self and others and maintain activities of daily functioning.

Severely Developmentally Delayed: An intellectual disability that impairs the offender's ability to provide self-care or maintain their safety. In addition, this type of impairment may render the offender vulnerable to victimization by others.

See the attached Weapons List for items/devices/weapons authorized for use at LSP.

PROCEDURE:

A. USE OF FORCE GUIDELINES

1. General Considerations:

a. The use of any type of force for punishment or reprisal is strictly prohibited.

b. Whenever possible, the determination to use force shall be made by the highest-ranking supervisor in the immediate area.

c. Whenever possible, force shall not be used against offenders with severe mental health illness (SMHI) or who are severely developmentally delayed (SDD) before appropriate Medical or Mental Health personnel can be called to the scene. The Mental Health Director shall be responsible for maintaining a list of offenders with SMHI and SDD, which shall be updated on a weekly basis or more often, if needed. This list shall be easily accessible to supervisory staff for use when needed.

d. Reasonable steps shall be taken to minimize the amount of force used.

000024

Penitentiary Directive No. 09.002
November 28, 2018
Page 4 of 18

  e. Employees will not carry security equipment on their person unless authorized by the Warden or his designee. Restraining devices may be carried by supervisory personnel while on duty. Handcuffs must be worn in an approved attachable handcuff case.

  f. Individual units may maintain small amounts of security equipment in areas inaccessible to offenders.

  g. Assigned trip officers shall be authorized to use chemical agents and the ASP in order to prevent an escape or to stop a disturbance while escorting offenders outside institutional grounds.

  h. With the exception of extreme emergencies, firearms are not permitted inside a secure compound or area unless authorized by the Warden.

2. Elements to Consider in the Review of Use of Force Incidents

  a. The extent of the injury suffered.

  b. The need for the application of force.

  c. The relationship between the need and the amount of force used.

  d. The threat reasonably perceived by the responsible supervisor.

  e. Any efforts made to temper the severity of a forceful response.

3. For Use of Less Lethal Force:

  a. Less lethal force is force, which normally causes neither death nor serious bodily injury.

  b. Physical force, chemical agents, EMDs, intermediate/impact weapons, or less lethal ammunitions and devices, and canine units may be used only in the following instances:

    1) Prior to the use of lethal force:

      a) To prevent the commission of a felony, including escape.

      b) To prevent an act, which could result in death or serious bodily injury to one's self or to another person.

000025

Penitentiary Directive No. 09.002
November 28, 2018
Page 5 of 18

        2) To defend one's self or others against any physical assault.

        3) To gain offender compliance when other less lethal force options within the force continuum have failed, are clearly inappropriate and/or ineffective.

        4) To prevent commission of a misdemeanor.

        5) To prevent serious damage to property.

        6) To enforce institutional rules.

        7) To prevent or quell a riot.

  c. The amount of physical force applied shall be appropriate to the amount of resistance. Once compliance starts, escalation of force stops.

4. For Use of Lethal Force:

  a. Lethal force is force that in the manner used, is capable of causing death or serious physical injury.

  b. It may be used only as a last resort and then only in the following instances:

        1) To prevent the commission of a felony, including escape.

        2) To prevent an act, which could result in death or severe bodily harm to one's self or another person.

5. For use of the following:

  a. Mechanical and Flex Cuff Restraints (see Penitentiary Directive No. 09.007/B).

  b. Extreme Restraints (see Penitentiary Directive No. 09.052).

  c. Chemical Agents, Intermediate/Impact Weapons and Other Less Lethal Weapons (see Section C).

  d. Electronic Muscular Disruption Devices (see Section D).

  e. Lethal Weapons (see Section B).

  f. Canine Units (see Section E).

Penitentiary Directive No. 09.002
November 28, 2018
Page 6 of 18

B.  USE OF LETHAL WEAPONS

1. All staff, when assigned weapons, shall use the following procedure in the prevention of escapes and in situations described in Section A.4.

2. Lethal weapons should be utilized only as a last resort and only as authorized herein.

3. In the utilization of firearms, the following procedures shall be followed:

   a. A verbal warning to cease actions (if feasible). In the case of an escape, this should occur when an unauthorized offender(s) gets within 10 feet of a perimeter fence.

   b. Warning shot (if feasible) to ensure that the offender is absolutely aware of the seriousness and probable consequences of his actions.

      IMPORTANT NOTE:  The only exception of the provisions in Section B.3. a and b would be when the circumstances require immediate action to protect life or stop an escape in progress where a verbal warning or warning shot is not practical. Warning shots may not be fired where it is foreseeable that a member of the public may be endangered.

   c. Shoot to disable (render offender incapable of continuing with action; which prompts the use of lethal force).

4. Officers should be aware of escape attempts via aircraft.

   a. Officers should contact the Control Center of the approach of low flying or unauthorized aircraft.

   b. The Control Center shall advise appropriate tower officers and the roving patrol of any expected aircraft.

   c. If it is suspected an escape attempt is being made by an aircraft, the officer should gather as much information as possible as to the craft's identifying markings, number of occupants and possible number of offenders involved.

   d. If an officer is fired upon by the aircraft or if the occupants are in the act of committing a felony, the officer may fire to protect himself, attempt to disable the craft, and to prevent its departure.

   e. The Control Center and highest-ranking officer in the area shall notify the appropriate authorities of unapproved aircraft as soon as possible.

000027

Penitentiary Directive No. 09.002
November 28, 2018
Page 7 of 18

    5. After Use

        a. When a weapon has been utilized, the affected individual(s) that suffered the wound shall be examined by qualified medical personnel as soon as possible after the situation has been brought under control.

        b. Staff may be referred to institutional medical personnel as appropriate based on the circumstances.

        c. In accordance with Department Regulation No. C-01-008 "Firearms and Weaponry Training," a Shooting Review Panel appointed by the Secretary shall review the circumstances surrounding each incident where an offender or other person is shot by departmental staff and shall make recommendations as necessary. The meetings shall occur at least quarterly but may occur on an incident-by-incident basis at the discretion of the Chief of Operations.

        d. All instances in which lethal weapons are used shall be reported in accordance with Section F of this directive.

    6. Armed Duty Post

        a. With the exception of those offenders being transported outside the institution, armed duty posts shall be positioned in areas inaccessible to offenders. Armed guards shall position themselves at a minimum of seventy-five (75) feet from all offenders.

        b. Armed escorts should exercise extreme caution during any movement of offenders in the course of outside trips and farm line operations. Mass movement of offenders from a security perimeter to another area requires armed escorts during hours of darkness or at a time designated by the Warden.

        c. Offenders are not allowed in the Armory or in areas where officers receive and/or return security equipment.

C. USE OF CHEMICAL AGENTS, INTERMEDIATE/IMPACT WEAPONS, EMD's AND OTHER LESS LETHAL WEAPONS

    1. Chemical agents, intermediate/impact weapons, or less lethal munitions and devices shall not be used as punishment under any circumstances and may be used against an offender or a group of offenders only in the following circumstances:

000028

Penitentiary Directive No. 09.002
November 28, 2018
Page 8 of 18

    a. To quell a riot and/or prevent loss of life, serious injury to person(s), and/or extensive destruction of property;

    b. To quell a disturbance that could lead to a serious situation which may jeopardize the safety, security and good order of the institution; or

    c. To regain control of the institution or a part of it.

2. The use of chemical agents, intermediate/impact weapons or less lethal munitions and devices is considered a use of force. When used, only the minimum amount of force necessary to control the situation shall be used. Any excessive use or unauthorized use will result in disciplinary action against the employee who does so.

3. A determination for corporate or mass use of chemical agents, intermediate/impact weapons or less lethal munitions and devices shall be made by the Warden or designee. (who should be the highest-ranking supervisor on duty in the immediate area where the incident is occurring).

If the electronic capture shield (EMD) is to be used, the highest-ranking official on duty in the immediate area where the incident is occurring will designate the officer who will use the shield. Only officers who have been trained in the proper use of the electronic capture shield may be designated to use the shield.

4. Chemical agents, intermediate/impact weapons, EMD's or less lethal munitions and devices shall not:

    a. Be used on those offenders who remain passive in their cells without causing a disturbance or becoming hostile unless the offender continuously defies orders to come to the bars of the cell. A determination for use under these circumstances, or against an individual offender, or a restrained offender (when circumstances are serious enough and deemed necessary) should be made by the highest-ranking supervisor on duty in the area where the incident is occurring.

    b. Be used on those offenders who are incapable of responding to the commands and orders being given to them by staff (e.g., during epileptic seizures, etc.).

    c. Whenever possible under prevailing circumstances, be used against an offender who is assigned to a Mental Health Treatment Unit until a qualified medical or mental health worker is present and attempted to control the situation, unless it is necessary to prevent loss of life, serious injury to person(s), or extensive property damage.

000029

Penitentiary Directive No. 09.002
November 28, 2018
Page 9 of 18

1) The medical or mental health worker must respond, assess, and attempt an intervention prior to the use of a chemical agent or the Cell Extraction Team.

2) If the intervention is not successful, the medical or mental health worker may authorize the use of chemical agents or the Cell Extraction Team.

3) In such cases, the medical or mental health worker will remain present at the head of the tier to monitor the offender's behavior during the use of chemical agents or Cell Extraction Team.

4) The medical or mental health worker will document the assessment and the success or failure of the intervention, time of incident, and follow-up treatment.

5) When immediate action is required, consultation between Mental Health Clinician and the Medical Director will occur as soon as reasonably possible, but no later than 72 hours to review the appropriateness of the action.

5. Chemical agents may be carried on the person of a security officer holding the rank of Lieutenant or above, given they have been properly trained in the use of chemical agents. Chemical agents will be passed along at shift change, ensuring it is weighed and recorded in the supervisor's log book.

6. When an offender or offenders are creating a disturbance, the officer on duty will attempt to handle the problem by ordering the offender(s) to cease the disturbance. If the offender(s) refuses and continues the disruptive behavior, the officer will then call his supervisor.

7. When the supervisor arrives, he will take charge of the situation and then order the offender(s) to cease the disturbance. If the offender(s) refuses the order, he will then order the offender(s) to come to the bars so that he may be properly restrained and removed from his cell to be placed in administrative segregation or the appropriate area. This procedure also applies to offenders already housed in administrative segregation.

8. If these efforts fail to control the situation and the offender(s) continues the disruptive behavior which, in the opinion of the highest ranking security supervisor on duty in the immediate area where the incident is occurring, may lead to loss of life, serious injury to person(s), extensive destruction of property, or a serious situation which may jeopardize the safety, security and good order of the facility,

000030

Penitentiary Directive No. 09.002
November 28, 2018
Page 10 of 18

the supervisor may then use only the minimum amount chemical agent necessary to subdue the offender(s).

9. If the highest-ranking security supervisor on duty in the immediate area where the incident is occurring determines that chemical agent will be used, he will personally apply the chemical agent. Only the minimum amount necessary to control the situation will be used. It is the supervisor's responsibility to ensure that the chemical agent is not used as a form of punishment or on an offender(s) who is physically incapable of responding to commands being given to him.

10. The offender(s) will then be given orders to come to the bars to be handcuffed. If the offender complies, appropriate restraints will be applied; he will be removed from the cell and offered a change of clothing and to shower. The offender(s) and affected staff will then be examined and treated, per established protocols, by an EMT or other qualified health care provider.

11. In the event that the use of chemical agent has no effect in controlling the situation as described above, the Control Center will be notified to assemble a cell extraction team to subdue the offender(s).

12. Once the cell extraction team arrives at the unit they shall have a camera operator present to videotape the procedure. The camera operator shall begin taping with the supervisor's briefing and continue taping, uninterrupted, until the offender is subdued and/or comes into compliance with the supervisor's orders. The camera operator should attempt to record from a vantage point, which allows the best documentation of the incident.

13. The cell extraction team leader will verbally inform the offender that the EMD will be used to subdue him.

14. The cell extraction team leader or another trained officer designated by the team leader will arc/test the EMD in the offender's presence to show that electricity is being used. The team leader will again give the offender the opportunity to come to the bars to be restrained.

15. If the offender still refuses to come to the bars to be restrained, the team leader in charge of the situation will utilize the EMD and riot helmet, or designate another qualified officer to do the same. The on/off switch will be placed in the "on" position, and the cell extraction team will enter the cell.

16. After the team has entered the cell, the officer utilizing the EMD and riot helmet will approach the offender and place the shield upon him. <u>Always use the minimum force necessary to control the situation</u>.

000031

Penitentiary Directive No. 09.002
November 28, 2018
Page 11 of 18

17. After the burst of electricity from the EMD has been administered, maintain cover with the shield. Have the offender move or physically move the offender to be restrained. If the offender physically resists, another burst of electricity may be applied with the electronic device. While the offender is being restrained, maintain cover with the shield. This procedure may be repeated only if necessary. The offender(s) will then be examined and treated, per established protocols, by an EMT or other qualified health care provider. Only minimum force will be used.

18. The only person authorized to use chemical agent or to order the cell to be entered to subdue an offender(s) is the highest-ranking security supervisor on duty in the immediate area where the incident is occurring. Under no circumstances will an officer or officers use chemical agents, intermediate/impact weapons, or less lethal munitions and devices to subdue an offender(s) without the supervisor being present.

19. ASP (EXPANDABLE TACTICAL BATON)

   a. On approval by the Warden, security supervisors of segregated areas shall be authorized to use the ASP in the performance of assigned duties. The ASP shall be stored in a proper storage compartment until such time as use is required. The ASP shall be inventoried.

   b. Trip officers shall be authorized to carry the ASP and chemical agent while escorting offenders outside the institution, as long as they are trained in its use. The ASP and chemical agent shall be signed out from the Armory as part of regular security equipment issue. Chemical agent will be weighed at the Armory upon checking out and when returning the item to the Armory.

   c. Only those staff who have been properly trained and certified shall be permitted to use the ASP.

20. After Use

   a. When chemical agents, intermediate/impact weapons or less lethal munitions and devices have been used:

      1) Affected individuals will be permitted to wash their face, eyes or other exposed skin areas, as soon as possible after the situation has been brought under control, and the individual will be examined by qualified medical personnel.

      2) Staff may be referred to medical personnel as appropriate based on the circumstances.

000032

Penitentiary Directive No. 09.002
November 28, 2018
Page 12 of 18

      b.   All instances in which chemical agents, intermediate/impact weapons or less lethal munitions or devices are used shall be reported in accordance with Section F of this directive.

D.  USE OF ELECTRONIC MUSCULAR DISRUPTION DEVICES (EMD's)

      1.   For the purpose of this Section, EMD's shall include only the electronic capture shield electronic restraint belt system and the electronic restraint NOVA Vest. (Refer to Department Regulation <u>No. C-02-006A "Use of Taser®" for specific procedures regarding use of the Taser®.</u>)

         The use of the electronic capture shield is authorized for use at LSP as described in Section C of this directive.

      2.   EMD's <u>shall not</u>:

         a.   Be used as punishment under any circumstances;

         b.   Be used continuously and unjustifiably used against an offender;

         c.   Be used on those offenders who are incapable of responding to the commands and orders being given to them by the staff (e.g. during epileptic seizures, etc.);

         d.   Be used against any individual known to have been exposed or subjected to chemical agents containing flammable substances or any other product(s) using a potentially flammable propellant until a minimum of five minutes has passed allowing for evaporation of the propellant or unless the individual has completed the de-contamination process required after such exposure;

         e.   Be used around known sources of flammable gases, liquids or solids;

         f.   Whenever possible under prevailing circumstances, be used against offenders assigned to an area designated as a Mental Health Treatment Unit until a qualified medical or mental health worker is present and has attempted to control the situation unless it is necessary to prevent loss of life, serious injury to person(s) or extensive property damage.

      3.   EMD's <u>may be</u> used against an offender or a group of offenders only in the following circumstances:

         a.   To quell a riot and/or prevent loss of life, serious injury to person(s) and/or extensive destruction of property;

000033

Penitentiary Directive No. 09.002
November 28, 2018
Page 13 of 18

  b. To quell a disturbance that could lead to a serious situation which may jeopardize the safety, security and good order of the institution; or

  c. To regain control of the institution or part of it.

4. The use of EMD's is considered a use of force. When used, only the minimum amount of force necessary to control the situation shall be used. Any excessive use or unauthorized use will result in disciplinary action against the employee who does so.

5. Electronic Capture Shield

  a. The electronic capture shield shall not be used on those offenders who remain passive in their cells without causing a disturbance or becoming hostile unless the offender continuously defies orders to come to the bars of the cell. A determination to use the electronic capture shield under these circumstances, or against an individual offender, shall be made by the highest-ranking supervisor on duty in the area where the incident is occurring.

6. Electronic Restraint Belt/Electronic NOVA Vest

  a. Use of the electronic restraint belt/vest shall be made by a designated supervisor and may be used in accordance with Penitentiary Directive No. 09.017, Transportation of Offenders. Such approval shall be obtained in advance, if possible.

    1) When transporting or moving an offender within or outside of the institution in accordance with institutional procedures;

    2) When transporting an offender whose medical condition is not conducive to full use of restraints;

    3) When the past history and/or present behavior of the offender creates the possibility of bodily harm to any person, property damage or escape;

    4) During court appearances when the Court issues an order that the other restraints be removed or other such activities where the use of restraints that are not visible or prominently observable is preferred.

  b. The Medical Director or his designee should be consulted to be medical clearance for electronic restraint belt or vest use and the electronic restraint belt should never knowingly be used on the following offenders:

000034

Penitentiary Directive No. 09.002
November 28, 2018
Page 14 of 18

> 1) Elderly offenders over 65 years of age;
>
> 2) Wheelchair bound;
>
> 3) Severely ill offenders:
>
>> a) Cardiac: Offenders with pacemakers or defibrillators, coronary artery disease or congestive heart failure;
>>
>> b) Liver: Offenders with cirrhosis and swelling of the legs or abdomen;
>>
>> c) Kidney: Offenders on dialysis;
>>
>> d) Stroke: Offenders that have trouble ambulating and therefore, use a cane or walker;
>>
>> e) HIV: Offenders with a CD4 count of 50 or less;
>>
>> f) Lung: Offenders with chronic obstructive pulmonary disease (COPD) or asthma bad enough to require more than one inhaler for treatment;
>>
>> g) Cancer: Offenders with a current diagnosis of cancer.

c. Except as stated in D.6.b., the electronic restraint belt/vest may also be otherwise used at the discretion of the Warden or designee in accordance with the provisions of this Section.

d. After Use

> 1) When EMD's have been used, affected offender(s) that suffered the electrical shock(s) shall be examined by qualified medical personnel as soon as possible after the situation has been brought under control.
>
> 2) Staff may be referred to institutional medical personnel as appropriate based on the circumstances.
>
> 3) All instances in which EMD's are used shall be reported in accordance with Section F of this directive.

E. CANINE UNITS

Penitentiary Directive No. 09.002
November 28, 2018
Page 15 of 18

1. Canine units shall be available to conduct building searches for offenders, to assist in escape procedures, to protect officers and others from serious bodily injury and death, to control crowds/riots, and to detect the presence of concealed contraband.

2. The Warden or his designee shall be responsible for determining whether a situation justifies canine use and appropriate tactical measures that should be taken.

3. Canines shall not be handled or given commands by anyone other than the assigned handler and/or his alternate.

4. Unless otherwise approved by the Warden or his designee, canines shall be used in a leashed condition at all times.

5. Canines may be used between the fences to provide perimeter security, when deemed necessary by the Warden or his designee. In the event that canines are utilized in providing perimeter security, one officer will provide roving security.

## F. REPORTING REQUIREMENTS

1. All situations involving the use of force, including the discharge of any firearms, use of chemical agents and use of other security equipment (except for training purposes) must be documented to establish the identity of personnel and offenders involved and to describe the nature of the incident. In reporting instances, the standard Unusual Occurrence Report (UOR) shall be submitted to the Warden or designee as soon as possible after the incident, but no later than the end of tour of duty and shall be reviewed by the Warden or designee. Each time the electronic device is used the Armory will provide a Use of Electronic Device Documentation (Form LSP-09.002-A) to be completed and forwarded to the appropriate areas.

   NOTE: This review does not include incidents where mechanical restraints are applied to an offender in a calm, non-hostile situation where no other use of force was required, i.e., instructing an offender to allow an officer to apply handcuffs in order to be escorted to the cell block following a rule violation.

2. The Warden or designee shall investigate all allegations of improper use of force and shall notify other authorities, as appropriate.

3. Reporting in accordance with Department Regulation No. C-05-001 "Activity Reports/Unusual Occurrence Reports Operational Units" is required.

4. Administrative review of use of force incidents shall be conducted in accordance with the provisions of Department Regulation Nos. C-01-008 "Correctional Officer

000036

Penitentiary Directive No. 09.002
November 28, 2018
Page 16 of 18

Firearms Training, Weaponry and Related Issues" and C-05-001-A "Serious Unusual Occurrence Review Panel."

G. EXAMINATION BY MEDICAL STAFF

1. As soon as possible after a situation has been brought under control through the use of force, the offender involved shall be examined by qualified medical personnel. Staff may be referred to institutional medical personnel as appropriate based on the circumstances.

H. SECURITY EQUIPMENT – ACCESS, STORAGE AND INVENTORY

1. The Armory is responsible for the maintenance and distribution of security equipment to all units, except canine units. Only personnel designated by the Assistant Warden/Security shall have access to the Armory's security equipment storage area. The Armory is responsible for the issuance of security equipment to authorized personnel for the performance of official duties, e.g., field officers, trip officers, roving security, tower officers, tactical unit personnel and chase team personnel. Any other issuance of security equipment shall be at the discretion of the Warden or his designee.

2. The Armory shall issue security equipment to authorized personnel such as shift supervisors and senior security officers of designated areas for use within the institution. Issuance of these items shall be documented by the issuing officers and signed by the receiving officer.

3. The Armory shall maintain an inventory of all weapons, ammunition, chemical agents, and related security devices. A written record will be maintained by Armory personnel regarding the issuance of any equipment in order to determine accountability and responsibility. This report, which will be submitted to the Assistant Warden/Security at least monthly, will detail weapon conditions and list expiration dates of other equipment.

4. At the beginning of each shift, Armory personnel will perform a test of the electronic devices. The results of the tests will be documented. If the electronic device fails the test, the Armory officer will notify the Communications Department to arrange for repairs.

5. Cellblock units will store chemical agents in a locked cabinet. Chemical agents stored in the cabinet will be inventoried daily. At the beginning and the end of the shift, the Cellblock supervisor will log the weight of each can in the logbook.

000037

Penitentiary Directive No. 09.002
November 28, 2018
Page 17 of 18

6. In the event that chemical agents are used, the name and number of the offender the agent was used on will also need to be logged in the logbook. The can will be weighed after the incident and the new weight noted in the logbook.

7. It is the responsibility of each respective Assistant Warden to ensure that expired agents and empty cans are sent to the Armory for replacement.

I. LAW ENFORCEMENT/VISITOR WEAPONS

1. Unless authorized by the Warden, law enforcement officers and visitors are not permitted to carry their firearms inside the confines of the prison.

2. Perimeter gate security personnel will secure weapons in a secure storage locker and issue receipts to the owners of the weapons.

J. ABUSE OF OFFENDERS, CORPORAL PUNISHMENT, OR USE OF UNNECESSARY OR EXCESSIVE FORCE

1. No employee shall abuse an offender for any reason. Violations are actionable under the Corrections Services Employee Manual, Employee Rules and Disciplinary Procedures.

2. The force used shall be proportional to the threat to which it is a response and shall cease when the resistance ceases.

3. Necessary force may include the use of physical contact, chemical agents, intermediate/impact weapons and other less lethal weapons and munitions, mechanical restraints, electric muscular disruption devices, and firearms.

4. The following uses of force are prohibited: corporal punishment, unnecessary force, and excessive force.

K. TRAINING

1. All correctional officers and other appropriate employees shall be provided a copy of the current Use of Force policy and thoroughly trained pursuant to Penitentiary Directive 04.003, "Correctional Officer Firearms Training, Weapons and Related Issues", before being authorized to carry any weapon. Authorized employees shall be instructed in accordance with the directive, and shall be provided with necessary training and retraining at least annually. Employees shall adhere to the principles and practices of the directive during training sessions.

2. All Corrections Security Officers will be trained in approved methods of self-defense and the use of force continuum.

000038

Penitentiary Directive No. 09.002
November 28, 2018
Page 18 of 18

3.  Only those authorized employees who have successfully completed specialized training and/or qualification in the operation and use of less lethal and/or lethal weapons may use such weapons.

4.  All instructors authorized to train others in the use of firearms, use of chemical agents, and use of force are certified by a competent authority to conduct such training. All chemical agent instructors must be trained in the treatment of individuals exposed to a chemical agent.


Darrel Vannoy
Warden


Attachment:        DPS&C Weapons List
                   LSP-09.002-B        ACA Standards Applicable to Penitentiary Directive
                                       No. 09.002

Form:              LSP-09.002-A        Use of Electronic Device Documentation


This policy supersedes Penitentiary Directive No. 09.002 dated June 18, 2018.

000039

CASE NUMBER: LSP-2019-0129

FIRST STEP RESPONSE FORM (FIRST STEP RESPONDENT)

TO: <u>PORTER, ALPHONSE 380822</u>              C JAG 1/R
                                                Living Quarters

Response to request dated , received in this office on 01/18/2019

In your letter of complaint dated January 17, 2019, while housed at Camp C, you state on October 30, 2018, Captain Juan Manchester, Captain David Voorhies, Jr., Captain Damon Turner, Assistant Warden Trent Barton and Assistant Warden Shannon Demars violated your 8th amendment right by administering excessive chemical agent on you while you were in full restraints. You state you were escorted into Tiger lobby and you were continuously threatened with physical harm if you did not believe in them (security named above) as gods and did not get a haircut. You state you were hit with a chair, thrown against a brick wall, slammed to the floor, hit in the mouth with clippers and two patches of hair was cut from your head.

Assistant Warden Trent Barton states you never notified him of any incident that you were involved in. He also states he never saw any officer beat or hit you with a chair. Assistant Warden Barton states he never made any threats towards you. Assistant Warden Barton states he has no knowledge of this incident or claims made by you.

Assistant Warden Shannon Demars states there was a beeper activation on October 30, 2018, due to you causing a disturbance in your cell. He states he was not on the unit at the time of the incident. He states according to institutional records the minimum amount of chemical agent was used to gain control of the situation. He states at no time was unnecessary use of force brought to his attention by you or any employee.

Captain Juan Manchester states he used chemical agent on you because you refused to come to the cell bars so restraints could be removed from you. He states at no time did he use excessive force towards you. He states proper procedures and protocol was followed during this incident.

Captain David Voorhies, Jr. states he never hit you with a chair, and he never cut your hair. He states he always conducts himself in a professional manner.

Captain Damon Turner states he conducts himself in a professional manner, and at no time was unnecessary force used on you.

Institutional records reflect on October 30, 2018, Captain Manchester responded to a beeper activation on Jaguar. He activated his body camera and proceeded to the unit. Upon arrival he was informed you were causing a disturbance by banging on the table in your cell. You were escorted to Tiger 1 right and after being placed in a cell you refused to come to the bars so your restraints could be removed. Captain Manchester gave you several direct verbal orders to come to the bars so your restraints could be removed. You flatly refused all orders given to you so the minimum amount of chemical agent was administered, and Captain Manchester was able to retrieve the restraints. Institutional records further reflect you were issued a disciplinary report for rule infractions, aggravated disobedience and defiance, on October 30, 2018. You appeared in disciplinary court on November 1, 2018, where you pled guilty to these rule infractions. Any force used was used in accordance with Penitentiary Directive 09.002, Use of Force. You were seen by medical personnel on October 30, 2018, and treated accordingly.

000040

No evidence is found to support your allegations.  Your request for administrative remedy is denied.

Prepared by: _Corie Mougeot, Lt._
Corie Mougeot, Lieutenant

Approved by: _____
James Cruze, AWIII

_____
Date    ᶜ/13/19

_____
Joseph F.G. Lamartiniere
Deputy Warden
Unit Head

<u>Instructions to Offender:</u>  If you are not satisfied with this response, you may go to Step Two by checking below and forwarding to the ARP Screening Officer in the manila envelope within 5 days of your receipt of this decision.

( ✓  I am not satisfied with this response and wish to proceed to Step Two.

Reason: _THE SECURITY (NAMES WITHIN) STORIES WILL BE REVEALED AS UN-TRUTHFUL IN THE FEDERAL COURT OF LAW._

_2-27-19_
Date

_Alphonse C. Porter #380822_
Offender's Signature    DOC#

000041