# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALPHONSE C. PORTER (#380822)** | **CIVIL ACTION** |
| **VERSUS** | |
| | **NO. 19-411-SDD-RLB** |
| **JUAN MANCHESTER, ET AL.** | |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN

OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 4, 2021.

```
                                    _____
                                    RICHARD L. BOURGEOIS, JR.
                                    UNITED STATES MAGISTRATE JUDGE
```

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**ALPHONSE C. PORTER (#380822)**   **CIVIL ACTION**

**VERSUS**

**NO. 19-411-SDD-RLB**

**JUAN MANCHESTER, ET AL.**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Motion for Summary Judgment filed on behalf of defendants Captain Juan Manchester, Damon Turner, Major Voorhies, Jr., Col. Trent Barton, and Assistant Warden Shannon Demars (R. Doc. 20). The Motion is not opposed.

*Pro se* plaintiff, an inmate currently confined at the Louisiana State Penitentiary ("LSP"), filed this action pursuant to 42 U.S.C. § 1983 against Captain Juan Manchester, Damon Turner, Major Voorhies, Jr., Col. Trent Barton, and Assistant Warden Shannon Demars complaining that his constitutional rights were violated due to the use of excessive force and having his hair forcibly cut in violation of his religious beliefs. He seeks monetary and injunctive relief.

Defendants move for summary judgment relying upon the pleadings, a Statement of Uncontested Material Facts, a certified copy of Administrative Remedy Procedure No. LSP-2019-129, the Affidavit of Trent Barton, a certified copy of the plaintiff's medical records, certified copies of disciplinary reports, certified copies of Unusual Occurrence Reports, a certified copy of the Chemical Agent Logbook, and a certified copy of LSP's Use of Force Policy. The plaintiff has not opposed the instant motion. However, the plaintiff's Complaint can be considered competent summary judgment evidence.[1]

---

[1] His complaint is verified, and thus it is competent summary judgment evidence. Fed. Rule Civ. P. 56(c)(1); *King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994) (verified complaints may potentially be considered as competent summary judgment evidence to the extent the complaint comports with the affidavit requirements of Rule 56). Rule 56, in turn, requires that affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence," and make the averral under penalty of perjury. Fed. Rule Civ. P. 56(c)(4); *King*, 31 F.3d at 346. The

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323.

Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp., supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or

---

plaintiff's Complaint states, "Plaintiff, submits this complaint, under penalty of perjur[y], to be true and correct." *See* R. Doc. 1, p. 5.

resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Verified Complaint, the plaintiff alleges that on October 30, 2018 defendants Manchester and Voorhies approached the plaintiff and began to harass him regarding his Rastafarian religious beliefs. The same defendants threatened to harm the plaintiff if he failed to get a haircut and shave his beard. The plaintiff informed Manchester and Voorhies that he knew his rights and would be filing a grievance. The defendants then ordered the plaintiff to cell bars to be restrained. The plaintiff complied and was escorted to the Tiger-1 Right shower cell. Manchester and Voorhies then sprayed the plaintiff with an excessive amount of a chemical agent without justification or provocation. The plaintiff was not allowed to decontaminate.

On November 8, 2018, defendants Barton and Demars ordered defendants Manchester, Voorhies and Turner to use a chemical agent and other malicious and sadistic tactics if the plaintiff did not renounce his religious beliefs. Manchester ordered the plaintiff to come to the cell bars to be restrained. The plaintiff complied and was escorted from Jaquar to the Tiger lobby area. Manchester, Voorhies, and Turner threatened to harm the plaintiff if he did not cut his hair and shave his beard and surrounded the plaintiff in a threatening manner.

The plaintiff kneeled and began praying to JAH. Voorhies then hit the plaintiff in his side twice with a chair and the plaintiff was knocked to the floor. Voorhies then stood over the plaintiff, threatened to kill him, jerked the plaintiff up from the floor, grabbed the plaintiff by the throat and slammed him against a concrete wall. Turner then grabbed the plaintiff and slammed him to the floor causing the plaintiff to hit his head and become dizzy. Voorhies then straddled the plaintiff and ordered Manchester to give him the clippers. Voorhies hit plaintiff in the mouth with the clippers causing the plaintiff's mouth to bleed and resulted in two chipped and loose teeth. Voorhies then pushed the blades of the clippers into the plaintiff's face causing him to

bleed while Voorhies shaved one patch of facial hair on each side of the plaintiff's face. The plaintiff was again hit with the clippers by Voohries on the side of the head, then Voohries forcefully cut a large patch of hair on both sides of the plaintiff's head.

While the plaintiff's hair and beard were being shaved, defendant Turner stood on the plaintiff's wrist and waist chain cuffs causing the plaintiff to scream out in pain. Defendant Manchester stood by watching and laughing. Defendant Barton looked in from the disciplinary court room and stated, "There is a lot more of that to come" if the plaintiff "didn't believe in the defendants as Gods."

On November 18, 2018, the defendants again approached the plaintiff, and noticed that he still had patches shaven out of his hair and beard. The plaintiff was then sprayed with an excessive amount of chemical agent and was not allowed to decontaminate.

In response to the plaintiff's allegations, defendants have asserted that they are entitled to qualified immunity in connection with the plaintiff's claims. The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.*

Undertaking the qualified immunity analysis, the Court finds that the defendants' motion should be granted in part. Specifically, the Court concludes that the plaintiff has failed to state a claim against defendants for a violation of his First Amendment rights or a violation of RLUIPA. The Court further finds that the plaintiff has failed to state a claim against defendant Demars for failure to intervene in the use of excessive force on November 8, 2018.

### First Amendment Free Exercise Claim

With regards to the plaintiff's First Amendment claim, a prison policy or practice will not be found unconstitutional if it is reasonably related to a legitimate penological objective of the facility. *Hay v. Waldron*, 834 F.2d 481, 487–87 (5th Cir. 1987). This general statement of the law has been upheld when a regulation prevented a group of Muslim inmates from attending Jumu'ah, the central religious ceremony of the Muslim faith, similar to Christian Sunday services or Saturday services of the Jewish faith. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 360 (1987). This rule has also been applied to regulations that required Rastafarians to cut their hair, even though keeping one's hair unshorn and unwashed is a tenet of the Rastafari religion. *See Scott v. Mississippi Dept. of Corrections*, 961 F.2d 77 (5th Cir. 1992), and *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995). As the to the plaintiff's First Amendment claims, *Scott* and *Hicks* are controlling. As such, the defendants' Motion should be granted with regards to these claims.

### RLUIPA

The Religious Land Use and Institutionalized Persons Act of 2000, § 2 et seq., 42 U.S.C.A. § 2000cc et seq. ("RLUIPA") prohibits imposing a substantial burden on an inmate's religious exercise unless that burden furthers a compelling interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc–1(a). RLUIPA provides a private cause of action for an inmate to enforce this right. 42 U.S.C. § 2000cc–2(a). It states, in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc–1(a).

"Congress enacted RLUIPA to address 'frivolous or arbitrary' barriers impeding [prisoners'] religious exercise...." *Davis v. Davis*, 826 F.3d 258, 264 (5th Cir. 2016) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 716 (2005)). RLUIPA's provisions are sweeping: "Congress enacted RLUIPA ... 'in order to provide very broad protection for religious liberty.' " *Holt v. Hobbs*, 547 U.S. 352, 356 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S.682, 693 (2014)).

RLUIPA established a burden-shifting framework for analysis. *Ali v. Stephens*, 822 F.3d 776, 782 (5th Cir. 2016). First, the plaintiff must make two showings: "(1) the relevant religious exercise is 'grounded in a sincerely held religious belief' and (2) the government's action or policy 'substantially burden[s] that exercise' by, for example, forcing the plaintiff 'to engage in conduct that seriously violates [his or her] religious beliefs.' " *Id.* at 782–83 (quoting *Holt*, 547 U.S. 352, 361). Once the plaintiff satisfies these requirements, the burden shifts to the government, which must "show that its action or policy (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that interest." *Id.* at 783.

To determine whether the government has satisfied its dual RLUIPA burden, a court must balance deference to the expertise of prison officials with its responsibility to apply RLUIPA's rigorous standard. "Prison officials are experts in running prisons and evaluating the likely effects of altering prison rules," *Holt*, 547 U.S. 352, 364, and lower courts must "respect that expertise." However, courts need not give "unquestioning deference" to the government. *Id.* Thus, "[r]ather than deferring to the prison's general policy regarding a matter," courts must

examine the prison's asserted interests as to the risks and costs of the accommodation sought. *Ali*, 822 F.3d at 783. For this reason, "policies grounded on mere speculation, exaggerated fears, or post-hoc rationalizations will not suffice to meet [RLUIPA's] requirements." *Davis*, 826 F.3d at 265 (quoting *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 533 (11th Cir. 2013)); *see also Holt*, 547 U.S. 352, 371 (Sotomayor, J., concurring) ("Indeed, prison policies 'grounded on mere speculation' are exactly the ones that motivated Congress to enact RLUIPA." (quoting 106 Cong. Rec. 16699 (2000))).

The law is clear that RLUIPA does not authorize a private cause of action against a defendant in his individual capacity or for monetary damages against state prison personnel for actions taken in their official capacity. *Sossamon v. Lone Star State of Texas,* 560 F.3d 316, 331 (5th Cir. 2009). Accordingly, only the plaintiff's claims for injunctive relief asserted against the moving defendants in their official capacities will be analyzed under RLUIPA.

In a recent case, the Fifth Circuit invalidated a prison regulation requiring a Rastafarian to cut off his dreadlocks. *See Ware v. Louisiana Dep't of Corr.*, 866 F.3d 263, 273 (5th Cir. 2017). In *Ware*, the Fifth Circuit determined that requiring an adherent of the Rastafari religion to cut his hair placed a substantial burden on the inmate's religious beliefs. *Id.* at 269. The State argued that the grooming policy assisted with contraband control, inmate identification, inmate hygiene, and inmate and employee safety. *Id.* at 267. The Fifth Circuit held that these stated reasons did not constitute a compelling state interest because nearly half the state inmates in Louisiana (those confined in local jails due to state facility overcrowding) were not subject to the grooming policy. The underinclusiveness of the policy's application undermined the State's argument that its interests in enforcing the policy were compelling. *Id.* at 270-71. The Fifth Circuit recounted the strong language in the Supreme Court's analysis in *Holt, supra*, that the prison in that case did not require its inmates to go "'bald, barefoot, or naked," even though head

hair, shoes, and clothing are more plausible places to hide contraband than a beard.'" *Id.* at 269. In addition, the State could offer no evidence to support its various rationales for not enforcing the grooming policy as to inmates held in parish and local jails.

Finally, the Fifth Circuit held that the policy of cutting inmates' hair short was not the least restrictive means of achieving its stated interests, noting that 39 other jurisdictions, including the Federal Bureau of Prisons, "either outright allow [inmates] to have dreadlocks or afford [them] the opportunity to apply for a religious accommodation that would allow dreadlocks." *Id.* at 272. Though one state need not follow the policies of her sister states, when an overwhelming majority of those states take the opposite approach, the state "'must, at a minimum, offer persuasive reasons why it believes that it must take a different course.'" *Id.* at 273. The State of Louisiana did not offer persuasive reasons for the different policy, and the Fifth Circuit reversed the District Court's judgment, rendered a decision granting Ware's request for a declaration that the grooming policies did not apply to him, and enjoined the Louisiana Department of Corrections from enforcing the policies against him. *Id.*

While prior Fifth Circuit precedent established that prisons could impose a ban on long hair, including dreadlocks, without running afoul of RLUIPA, binding authority to the contrary arose in July of 2017 in *Ware*.[2] The plaintiff's case is indistinguishable from *Ware*. The plaintiff is Rastafarian and had his hair forcibly cut pursuant to the same policy at issue in *Ware*. The plaintiff alleges that these defendants were personally involved in the cutting of the shaving of the plaintiff's hair and beard. As such the plaintiff's Complaint states a claim under RLUIPA against defendants in their official capacities for injunctive relief. However, as noted by this

---

[2] *See Longoria v. Dretke*, 507 F.3d 898, 901 (5th Cir. 2007) (prison grooming policy requiring short hair did not violate RLUIPA). District Courts within the Fifth Circuit have cited *Longoria* as binding authority on the issue. *See Thunderhorse v. Pierce*, 364 F. App'x. 141, 146 (5th Cir. 2010) (not reported), *Legate v. Stephens*, No. 2:13-CV-148, 2014 WL 3588489, at *3 (S.D. Tex. July 21, 2014) (not reported)

Court in *Ceasar v. Louisiana Department of Corrections,* 2019 WL 3980644 (M.D. La. July, 26, 2019), the policy at issue, which allowed for the plaintiff's hair to be cut against his religious beliefs, was changed in 2018. The policy now allows offenders to request religious exemptions to the offender grooming standards, and based upon dicta in *Ware,* no longer violates RLUIPA.[3] As such, the plaintiff's claim for injunctive relief is moot.

**Eight Amendment Excessive Use of Force**

A use of force by a prison official is excessive and violates the Eighth Amendment to the United States Constitution only when such force is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Not every malicious or malevolent action by a prison guard gives rise to a federal cause of action, however, and the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind." *Hudson v. McMillian, supra*, 503 U.S. at 10, *quoting Whitley v. Albers*, 475 U.S. 312, 327 (1986).

The fact that an inmate may have sustained only minimal injury, however, does not end the inquiry, and an inmate who has been subjected to gratuitous force by prison guards "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy, supra*, 559 U.S. at 38. Notwithstanding, the Court may consider the extent of injury, if any, as potentially relevant to a determination whether an alleged use of force was excessive under the circumstances. In addition, other factors that may

---

[3] In *Ware*, the Fifth Circuit noted that other jurisdictions provide inmates the opportunity to apply for religious accommodations that would excuse the usual grooming policy, indicating that such an exception would render the policy consistent with RLUIPA. *Ware*, 866 F.3d at 273.

be considered in determining whether an alleged use of force has been excessive include the perceived need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7.

A defendant security officer may be found responsible for failure to intervene and take reasonable measures to protect an inmate from another officer's excessive use of force under a theory of bystander liability. An officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act. *See Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) *citing Hale v. Townley*, 45 F.3d 914, 916 (5th Cir. 1995).

The competent summary judgment evidence submitted by the defendants shows that, on October 30, 2018, Sgt. Stewart activated his beeper because the plaintiff was causing a disturbance by banging on the table in his cell. The plaintiff refused all orders to cease the disturbance. Defendant Manchester arrived and the plaintiff was escorted to Tiger 1 Right. The plaintiff then refused several orders to come to the bars to have his restraints removed. Manchester exited the tier, and obtained a chemical agent. He again ordered the plaintiff to come to the bars and the plaintiff refused. Manchester then administered a minimum amount of chemical agent, and the plaintiff was treated by medical personnel, given a jumpsuit, and allowed to shower. *See* R. Doc. 20-4, p. 18-19, and 22. The plaintiff was issued a disciplinary report for Aggravated Disobedience and Defiance for which he was found guilty. *See* R. Doc. 22-4, p. 20.

On November 8, 2018 defendant Turner gave the plaintiff several direct verbal orders to sit down in order for his hair to be cut pursuant to a sanction issued in disciplinary court. The

plaintiff refused and became aggressive and combative. Defendants Turner and Voorhies then restrained the plaintiff by taking him down to floor. The plaintiff was then given a shave and a haircut, and was seen by medical. The plaintiff was issued a disciplinary report for Aggravated Disobedience and Defiance for which he was found guilty. *See* R. Docs. 20-7, p. 2 and 20-6, p. 5.

On November 18, 2018, a chemical agent was used on the plaintiff and he was seen by medical. *See* R. Doc. 20-6, p. 4. The defendants have not offered any evidence with regards to this use of force. Defendant Barton has submitted an affidavit denying the entirety of the plaintiff's allegations. *See* R. Doc. 20-5.

While the documentary evidence leans in favor of the defendants in some regards, the allegations of the plaintiff's Complaint are verified and are competent summary judgment evidence. In resolving a motion for summary judgment, the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). As such, with regards to the plaintiff's claim for excessive use of force against defendants Manchester, Turner, and Voohries and the plaintiff's claim that defendant Barton failed to intervene in the excessive use of force, the defendants' Motion should be denied. With regards to defendant Demars, the plaintiff does not allege that Demars was personally involved in the excessive use of force or present for the same. As such, the defendants' Motion should be granted in this regard.

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this Court over potential state law claims, a district court is authorized to decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims would substantially predominate over the claims over which the Court has original jurisdiction, if the Court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. ' 1367. In the

instant case, having recommended dismiss of several of the plaintiff's federal claims, the Court further recommends that supplemental jurisdiction be declined in connection with the plaintiff's potential state law claims.

## **RECOMMENDATION**

It is recommended that the Court decline the exercise of supplemental jurisdiction in connection with any potential state law claims, the Motion for Summary Judgment (R. Doc. 20), be granted in part, and the plaintiff's claims for violation of his First Amendment Rights and RLUIPA asserted against all defendants, and the plaintiff's claim for failure to intervene in the excessive use of force assert against defendant Shannon Demars be dismissed, with prejudice. It is further recommended that in all other regards the Motion (R. Doc. 20) be denied, and that this matter be referred back to the Magistrate Judge for further proceedings herein.

Signed in Baton Rouge, Louisiana, on January 4, 2021.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**